IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HARLEY D. FELLOWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:10CV701-SRW |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

On February 4, 2008, when he was twenty-six years old, plaintiff Harley D. Fellows filed an application for Supplemental Security Income (SSI) alleging that he had been disabled since birth due to heart problems, anxiety and depression. (R. 108, 114). In an unfavorable decision issued on February 23, 2010, the ALJ concluded that plaintiff suffers from the severe impairment of "congenital heart disease with tricuspid atresi[a], fontan, LV dysfunction and flutter with current pacemaker placement[.]" (R. 14). She found that he retains the residual functional capacity for "a reduced range of sedentary work" – *i.e.*, that he "can lift 10 pounds occasionally, sit for 8 hours and stand/walk 2 to 4 hours." (R. 14). The ALJ rendered a "step five" decision, relying on vocational expert testimony to conclude that plaintiff can "perform the requirements of representative occupations such as system surveillance monitor and call operator, both of which have significant numbers of jobs in the national economy." (R. 23). The Appeals Council denied review on July 29, 2010. (R. 1-5).

On August 17, 2010, plaintiff filed the present action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

## Standard of Review

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred by failing to find that his depression is a severe impairment. Plaintiff alleged disability based, in part, on depression. (R. 114). Disability Determination Services sent plaintiff to Randall Jordan, Psy.D., for a consultative psychological examination on April 24, 2008. (See Exhibit 6F). M. Hope Jackson, Ph.D., a non-examining agency psychologist, reviewed plaintiff's records and completed a Psychiatric Review Technique Form and a Mental RFC Assessment form on May 8, 2008. (Exhibits 8F, 9F). After the October 5, 2009 hearing, the ALJ requested and received plaintiff's mental health treatment records from Dr. Fernando Lopez at Spectracare. The records included a treatment note for an evaluation on July 15, 2009, a memo regarding a physician's verbal order to increase plaintiff's Depakote dosage on August 19, 2009, after plaintiff reported to a Spectracare nurse that his medications were not working, and a form reflecting plaintiff's reports in February 2009 and September 2009 regarding medication prescribed by other physicians. (Exhibits 16F, 18F).

The Commissioner's regulations establish a "special technique" that an ALJ is required to use in assessing a claimant's mental impairments. See 20 C.F.R. § 416.920a. The ALJ is required to decide whether the claimant has a medically determinable mental impairment and, if so, to rate the claimant's degree of limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. The regulation further provides, "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none

in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]" 20 C.F.R. § 416.920a(d)(1).

In evaluating plaintiff's mental limitations pursuant to the "special technique" set forth in the regulation, the ALJ "adopt[ed] the findings of Dr. Jackson" and found that the plaintiff has a "mild" limitation of functioning in activities of daily living, "moderate" limitations in social functioning and in maintaining concentration, persistence or pace, and that he would experience no episodes of decompensation during regular and sustained attempts at work and work-like activities. (R. 21-22). Despite her conclusion that plaintiff has "moderate" limitations in two of the functional areas, the ALJ did not find plaintiff's depression to be a severe impairment and did not include any mental functional limitations in her finding as to plaintiff's residual functional capacity. (R. 14).[1] The ALJ's failure to find

---

[1] The ALJ made no express finding that plaintiff's depression is not severe; she simply did not include any mental impairment among the severe impairments she identified in Finding No. 2. (R. 14, 19-22). The ALJ first addressed plaintiff's "physical health" and concluded that his "alleged physical symptoms and conditions are not of a disabling degree." (R. 19). The ALJ wrote:

> All of the above factors lead the undersigned to a conclusion that the claimant's alleged physical symptoms and conditions are not of a disabling degree. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing on a regular and sustained basis, the physical requirements of a reduced range of sedentary work, with some additional limitations. The Administrative Law Judge finds that the claimant can lift 10 pounds occasionally, sit for 8 hours and stand and walk 2-4 hours.
>
> Having addressed the claimant's physical health, the undersigned is bound to address his mental functioning.

(R. 19). The ALJ then described the evaluation process required by 20 C.F.R. § 416.920a and the

4

that plaintiff suffers from a "severe' mental impairment conflicts with her express findings that plaintiff has a "moderate" limitation in social functioning[2] and "moderate" limitations in maintaining concentration, persistence or pace and, as plaintiff contends, constitutes legal error.  See 20 C.F.R. § 416.920a(d); Craft v. Astrue  539 F.3d 668,675 (7th Cir. 2008)("If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe. *Otherwise, the impairment is considered severe*, and the ALJ must determine whether it meets or is equivalent in severity to a listed mental disorder.")(emphasis added)(citing 20 C.F.R. § 404.1520a(d), the Title II counterpart of § 416.920a(d)).

In responding to plaintiff's contention, the Commissioner argues that plaintiff bears the burden of demonstrating that his impairment is severe, and that plaintiff's record of sporadic treatment at Spectracare "is an insufficient basis to find this impairment to be severe." (Commissioner's brief, pp. 12-13).  However, the Commissioner's argument treats the issue as one of substantial evidence only and ignores the ALJ's findings that plaintiff

---

evidence of record pertaining to plaintiff's mental status. (R. 19-20).  She then observed that "the claimant has not sought any type of treatment one would expect from a *mentally disabled individual*" and that the reports of Dr. Jordan and Dr. Jackson "[s]upport[] the Administrative Law Judge's finding that the claimant *is not disabled from a mental standpoint*."  (R. 21)(emphasis added).  The ALJ concluded her analysis of plaintiff's mental functioning with her findings regarding plaintiff's limitations in the four functional areas.  (R. 21-22).  The question before the ALJ was not whether plaintiff was "disabled from a mental standpoint," but whether his residual functional capacity – taking his physical and mental limitations, if any, into account – rendered him unable to perform past relevant work or other jobs.

[2] The ALJ observed that "[s]ocial functioning in work situations may involve interactions with the public, responding appropriately to persons in authority or cooperative behaviors involving co-workers." (R. 22).

suffers from "moderate" limitations in social functioning and in concentration, persistence or pace. The evidence of record, including the consultative psychological examination and the opinion of the non-examining agency psychologist, was sufficient to convince the ALJ that plaintiff has moderate limitations in these two broad functional areas; the ALJ's conclusion that plaintiff suffers moderate limitations establishes, as a matter of law, that plaintiff's mental impairment is "severe." See 20 C.F.R. § 416.920a(d); Craft, 539 F.3d at 675.

The Commissioner further argues that "[i]n any event, the ALJ discussed this alleged impairment, and accounted for any limitations which may have resulted from it in limiting hi[m] to performing only unskilled work" and, also, that the ALJ's failure to designate a mental impairment as "severe" does not constitute reversible error because the ALJ is obligated to consider the combined effect of all of plaintiff's impairments – both severe and non-severe – in the sequential evaluation process. (Commissioner's brief, p. 13). The ALJ did not, however, include *any* mental limitations in her finding as to plaintiff's RFC; she did not limit plaintiff to unskilled work, as the Commissioner argues. See R. 14, Finding No. 4 ("After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 416.967(a). The claimant can lift 10 pounds occasionally, sit for 8 hours and stand/walk 2 to 4 hours."). An ALJ's failure to find an additional impairment to be "severe" may be harmless, even if erroneous, where the ALJ proceeds beyond step two of the sequential analysis and it is apparent from the decision that the ALJ considered any

6

limitations imposed by the impairment in assessing the claimant's residual functional capacity. However, the ALJ here included no mental limitations whatsoever in her RFC finding, despite her conclusion that plaintiff has moderate limitations in social functioning and in maintaining concentration, persistence and pace.[3] Thus, it is clear that the ALJ did not consider the limitations arising from plaintiff's mental impairment in formulating plaintiff's RFC.

While the ALJ did not include a limitation to unskilled work in her RFC finding, she did include a limitation to "simple, routine, repetitive task[s]" in her hypothetical question to the vocational expert at the hearing. (R. 45).[4] The addition of this limitation in the hypothetical question, however, does not render the ALJ's error harmless. There is evidence that, despite his moderate limitations in concentration, persistence or pace, plaintiff "has the ability to understand, recall and carry out short, simple instructions and to attend to such tasks for two hour intervals." (See R. 217)(Dr. Jackson's functional capacity assessment). However, the ALJ included no limitation in her hypothetical question to the VE that accounts – either expressly or implicitly – for the ALJ's finding that plaintiff suffers moderate limitations in social functioning. See R. 44-45.[5] "In order for a vocational expert's testimony

---

[3] Additionally – although the court's conclusion of reversible error does not rest on this observation – the ALJ's analysis suggests that she first determined the RFC according to plaintiff's "physical health" (R. 19) and then added no mental limitations to that physical RFC assessment after she determined that plaintiff "is not disabled from a mental standpoint" (R. 21). See n. 1, *supra*.

[4] The court notes that the ALJ's hypothetical question did not limit the lifting of ten pounds to "occasionally," a limitation expressed in her RFC finding. (R. 14, 44-45).

[5] Dr. Jackson concluded that plaintiff's moderate impairment in social functioning resulted in a moderate limitation in his ability to interact appropriately with the general public and,

to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)(citation omitted). Accordingly, the ALJ's error in failing to find that plaintiff suffers from a severe mental impairment or to include mental functional limitations in her RFC determination consistent with her findings that plaintiff has "moderate" limitations in social functioning is not harmless; it deprives the ALJ's step five finding of the support of substantial evidence. Wilson, 284 F.3d at 1227; see also Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1179-81 (11th Cir. 2011)(where the ALJ does not indicate that the medical evidence suggests that a claimant's ability to work is "unaffected" by a limitation identified in the PRT analysis, the hypothetical question must account for that limitation)(considering a PRT finding of a moderate deficiency in concentration, persistence or pace);[6] Richter v. Astrue, 379 Fed. Appx. 959, 962 (11th Cir. May 21, 2010)(unpublished opinion)(rejecting the Commissioner's argument that deficiencies identified in the PRT

---

accordingly, that his contact with the general public should be infrequent. (R. 216-17). The ALJ did not include this limitation or any similar limitation in her hypothetical question to the vocational expert. (R. 44-45). While it is possible – and even probable, as to the surveillance system monitor – that the jobs identified by the VE do not require frequent contact with the general public, there is no evidence of record that this is so. The ALJ cited only the VE's testimony in support of her step five finding. While she could also have chosen to rely on the job descriptions in the DOT, she did not do so; her written decision includes no reference to specific DOT provisions. Accordingly, the court does not consider whether evidence in the DOT might have rendered the ALJ's error harmless.

[6] The ALJ drew no express conclusion, based on medical evidence of record, that plaintiff's moderate limitations in social functioning had no effect on his ability to work and the court finds no indication in the ALJ's decision that she conducted such an analysis of the assessed limitation.

analysis at step two need not be included in an ALJ's hypothetical question).[7]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED, and this action REMANDED to the Commissioner for further proceedings.[8] A separate judgment will be entered.

DONE, this 8th day of September, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[7] Because the court has determined that the Commissioner has committed reversible error as to plaintiff's mental limitations, the court does not reach plaintiff's contentions regarding the ALJ's findings regarding his physical capacity. The court expects that the Commissioner will consider, on remand, the issues identified by plaintiff – including his contention that the ALJ erred in rejecting, without explanation, the additional exertional and non-exertional limitations assessed by the consultative cardiologist.

[8] In reversing the Commissioner's decision for legal error, the court has not determined and intends no implication that the Commissioner should, on remand, find plaintiff to be entitled to supplemental security income.